## THE OCEANIA VANCE.

(Circuit Court of Appeals, Ninth Circuit. May 1, 1916.)

### No. 2599.

1. COLLISION ☞82(3)—SCHOONER AND TUG WITH TOW—EXCESSIVE SPEED IN FOG.

A schooner sailing before the wind at a speed of from 6½ to 7 knots an hour in a thick fog, and where passing vessels were frequent, *held* in fault for a collision with a tug having a tow, on the ground of excessive speed.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 171–174; Dec. Dig. ☞82(3).]

2. COLLISION ☞82(3)—INTERNATIONAL RULES—NAVIGATION IN FOG.

Article 16 of the International Rules (Act Aug. 19, 1890, c. 802, § 1, 26 Stat. 326 [Comp. St. 1913, § 7854]), which requires every vessel to go at moderate speed in a fog, applies to sailing as well as steam vessels.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 171–174; Dec. Dig. ☞82(3).]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty for collision by the Puget Sound Tugboat Company, owner of the tug Sea Lion, against the schooner Oceania Vance;

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Coast Shipping Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 217 Fed. 973.

Harry Ballinger and Charles T. Hutson, both of Seattle, Wash., for appellant.

Hughes, McMicken, Dovell &` Ramsey and Otto B. Rupp, all of Seattle, Wash., for appellee.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

ROSS, Circuit Judge. [1] This case grew out of a collision between the steam tug Sea Lion, at the time bound from Waldron Island to Grays Harbor and having in tow a barge laden with rock, and the schooner Oceania Vance, at the time in ballast under sail before a stiff breeze. The place where the collision occurred was one much frequented by vessels, and there was a thick fog prevailing. The collision resulted in the sinking and total loss of the tug and the personal effects of its officers and crew. The trial court found that the schooner was at the time proceeding at a speed of from 6½ to 7 knots an hour, which speed was an immoderate one, and was the sole cause of the accident, and accordingly gave judgment against the claimant of the schooner for the full amount of the damage caused by the collision.

We think the evidence in the case justified the conclusion that the speed of the schooner was from 6½ to 7 knots an hour, and we are also of the opinion that that speed, under the circumstances then prevailing, was immoderate, and therefore that the schooner was in that respect rightly held in fault. The Chattahoochee, 173 U. S. 540, 19 Sup. Ct. 491, 43 L. Ed. 801; The Umbria, 166 U. S. 404, 17 Sup. Ct. 610, 41 L. Ed. 1053; The Belgian King, 125 Fed. 869, 60 C. C. A. 451; The Eagle Point, 120 Fed. 449, 56 C. C. A. 599. Speeds much less than 6 knots have frequently been condemned. The Umbria, supra; The George W. Roby, 111 Fed. 601, 49 C. C. A. 481; The Michigan, 63 Fed. 280, 11 C. C. A. 187.

[2] The same rule in respect to the necessity of slackening speed in foggy weather that applies to steamers is equally applicable to sailing vessels. The Chattahoochee, supra. In that case the court further said, among other things:

"While sailing vessels have the right of way as against steamers, they are bound not to embarrass the latter, either by changing their course or by such a rate of speed as will prevent the latter from avoiding them. There is also the contingency that a schooner sailing with the wind free, as in this case, may meet a vessel close-hauled, in which case the latter has the right of way, and the former is bound to avoid her. Beyond this, however, a steamer usually relies for her keeping clear of a sailing vessel in a fog upon her ability to stop and reverse her engines; whereas it is impossible for a sailing vessel to reduce her speed or stop her headway without maneuvers which would be utterly impossible after the two vessels come in sight of each other. Indeed, she can do practically nothing beyond putting her helm up or down to 'ease the blow' after the danger of collision has become imminent. The very fact that a sailing vessel can do so little by maneuvering is a strong reason for so moderating her speed as to furnish effective aid to an approaching steamer charged with the duty of avoiding her."

Article 16 of the International Rules provides:

"Every vessel shall, in a fog, mist, falling snow, or heavy rainstorms, go at a moderate speed, having careful regard to the existing circumstances and conditions. A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over." 26 Stat. 326 (Comp. St. 1913, § 7854).

It is unnecessary to determine whether the tug was also at fault, for the reason that the record shows that the tug was a total loss, and that its value was over $30,000, and that the damage to the schooner did not exceed $500. Therefore, assuming that the two boats were equally at fault, and that the damages should be equally divided under the rule applicable to such cases, the judgment rendered by the court below in favor of the libelant did not exceed the sum for which the claimant would be responsible.

Judgment affirmed.